IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| JANE ROE<br>c/o Lexero Law Firm<br>10 G St NE Suite 710<br>Washington, DC 20002<br><br>v.<br><br>BERNABEI & WACHTEL, PLLC<br>1775 T Street, NW<br>Washington, DC 20009<br><br>and<br><br>LYNNE BERNABEI<br>3701 Reno Rd. NW<br>Washington, DC 20008<br><br>and<br><br>MEIXING REN<br>3486 Pence Court<br>Annandale, Virginia 22003<br><br>and<br><br>DOES 1-10 | Case No. 14-cv-1285<br><br>Jury Trial Demand |

## **COMPLAINT**

Plaintiff JANE ROE[1] ("Roe"), through undersigned counsel, hereby files her Complaint

against Defendants BERNABEI & WACHTEL, PLLC ("B&W"), LYNNE BERNABEI

("Bernabei"), and MEIXING REN ("Ren") and states as follows:

---

[1] Pseudonym

1

## INTRODUCTION

1.      Plaintiff Jane Roe brings this complaint against the named defendants for violations of her intellectual property rights under law. Defendants violated Plaintiff's rights when they acquired and used her copyrighted materials without her permission.

2.      Jane Roe was the victim of sexual harassment by a supervisor ("Supervisor") who was an employee of her employer ("Employer") in 2012. By virtue of quick and creative thinking, she succeeded in recording her attacker's vulgar actions, with both video and audio recordings, via her mobile phone.

3.      The video was a key factor in Roe's eventual harassment claim, which was privately filed with the U.S. Equal Employment Opportunity Commission ("EEOC"). During her sexual harassment claim, Ms. Roe selectively shared her video with only a few confidants, including Defendant Ren, for purposes of demonstrating that her claims were not fabricated.

4.      Ms. Roe's sexual harassment matter was eventually settled privately, without any public knowledge of Ms. Roe's identity, the recorded video or the unlawful sexual harassment.

5.      Despite Ms. Roe's attempts to move her life beyond the incident, her Employer was subsequently sued[2] by other employees, including Mr. Ren, in July of 2013 ("Employee Lawsuit"). These employees alleged, among other things, that the same Employer had threatened them with various forms of retaliation for purportedly assisting Ms. Roe with her sexual harassment complaint with the EEOC. Defendant Bernabei, a licensed attorney in the District of Columbia, was the only attorney appearing as counsel on the Plaintiff's Complaint. B&W is designated as the only law firm on the Plaintiff's Complaint.

---

[2] See Ren et al v. Phoenix Satellite Television Inc., 13-cv-01110 (U.S.D.C. for D.C.) (2013).

6.     Shortly after the Complaint was filed in the Employee Lawsuit, Defendants Bernabei and B&W began an extremely aggressive public relations campaign against the Employer, the centerpiece of which was Plaintiff's video recording of her sexual assault. Plaintiff's video was shared with numerous media outlets without authorization.

7.     On information and belief, Defendants Bernabei and B&W have a contingency fee relationship with their clients, including Mr. Ren. The highly negative public relations campaign directed at the Employer is presumably designed to lead to a larger settlement from the Employer subject to the Employee Lawsuit. A higher settlement number presumably creates a direct financial benefit to each of the Defendants.

8.     Despite the fact that Ms. Roe has absolutely no involvement in the Employee Lawsuit, no knowledge of the claims, and no interest in the eventual outcome, Defendants aggressively injected Ms. Roe's copyrighted material into their for-profit public relations campaign without her knowledge or consent.

9.     First, Defendants' publicly shared Plaintiff's copyrighted video, containing the extremely private moments of her emotional sexual harassment, entirely without her consent. On information and belief, the video was posted on YouTube, released to local television stations, and otherwise liberally shared with numerous third parties, without any authorization to do so. The video "went viral," being copied or displayed hundreds of thousands of times on numerous digital devices, such that there is now no chance that the video will ever be completely removed from public display.

10.     Defendants intentionally and knowingly created the public relations campaign against the Employer for the purposes of bolstering the Employee Lawsuit and generating substantial financial benefits for each of the named Defendants. Defendants' campaign was initiated without

obtaining the consent of Plaintiff, because Defendants knew that Plaintiff would never agree to

have her emotionally scarring sexual harassment video broadcast to the world. Plaintiff's rights

in her copyrighted work were violated when her work was used without her consent.

## JURISDICTION AND VENUE

11.     This Court has federal question jurisdiction over the action pursuant to 28 U.S.C. §

1331 as an action that arises under the laws of the United States. The Court further has exclusive

federal jurisdiction pursuant to 28 U.S.C. § 1338(a) as a case arising under the Copyright Act.

Jurisdiction is also proper as to Plaintiff's claims arising under 18 U.S.C. § 1030.

12.     Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391 because a

substantial part of the events giving rise to the claims occurred in the District of Columbia, and a

substantial part of the property that is the subject of the action is situated in the District.

## PARTIES

13.     Plaintiff Jane Roe is an adult citizen residing in Washington D.C. Ms. Roe is a

journalist by trade who heavily relies on her reputation in her chosen industry.

14.     Defendant Bernabei and Wachtel, PLLC is a law firm with its principal place of

business in Washington, DC. On information and belief, Defendant B&W regularly conducts

business and practices law in Washington, DC.

15.     Defendant Lynne Bernabei is a licensed attorney in the District of Columbia.

According to B&W's website, Ms. Bernabei has been practicing "for over thirty years," has

appeared in numerous "broadcast media outlets" and has been named one of the "Best Attorneys

in Washington, D.C." See Exhibit #19, Bernabei Profile.

16.     On information and belief, Defendant Meixing Ren has worked as a broadcast

engineer in the Employer's Washington, DC bureau since April of 2011.

4

17.     Defendants Does 1-10 are persons, organizations, and/or corporations who, along with the other Defendants, initiated, conspired in the initiation, or assisted in the violations of law described herein. Plaintiff will file an Amended Complaint upon ascertaining the identities of these unknown defendants during discovery.

## FACTUAL BACKGROUND

18.     Plaintiff Jane Roe began working for the Employer as a journalist in 2011. Roe's duties at her job included, among other things, covering U.S. foreign policy and national news stories. Ms. Roe served the Employer faithfully and competently at all times.

19.     On or about September 6, 2012, Ms. Roe was sexually harassed by a Supervisor employed by the Employer. The Supervisor aggressively moved towards Ms. Roe and touched her inappropriately. Among other things, the Supervisor demanded that Roe "hug" him and "lean [his] body against" Roe. In response, Roe repeatedly told the Supervisor to "let me leave" and "I need to go now" and "I really need to go now." The entire interaction lasted for approximately two minutes, and Chinese language was spoken throughout.

20.     Thinking quickly, Ms. Roe managed to record the entire interaction on her iPhone's video camera, which was creatively hidden in her purse.

21.     Ms. Roe made quick creative judgments as to the sight and sounds the phone would likely record by leaving the phone in her purse.

22.     Ms. Roe let her phone record the sound and as much visual footage as possible without being obvious to the Supervisor.

23.     Roe also made efforts to escape her assailant without disclosing the location of the phone or the ongoing recording.

24.     The resulting video, complete with audio, resulted in a Quicktime media file, with a .MOV file extension, that is approximately 143 Megabytes in size that was saved and retained on Roe's iPhone. <u>See</u> Exhibit #1, Video File. The video was one minute and fifty-three seconds in length. <u>Id.</u>

25.     Ms. Roe eventually applied for a federal copyright registration for her work in October of 2013. <u>See</u> Exhibit #2. As demonstrated, Plaintiff is the registered owner of a registered copyright for the video entitled "Unwanted Attention" (the "Work") which constitutes an original work of authorship.

26.     Upon her escape from the Supervisor, Ms. Roe reviewed the video and replayed the interaction in her mind. It was immediately obvious to her that the Supervisor's actions were highly inappropriate and were almost certainly unlawful.

27.     Armed with her video, Ms. Roe began considering an employment law claim. Despite her rights being violated, Ms. Roe had no interest in publicly disclosing the interaction or her video, but felt obligated to ensure that the Supervisor's actions did not go without punishment to protect other employees from a similar experience.

28.     On September 10, 2012, Ms. Roe, concerned about the value of the recording, and the fact that it was not backed up, attempted to attach the video as an attachment in an email to herself. <u>See</u> Exhibit #3, (no subject) Email. Despite her efforts, the video did not transfer through email successfully, because only "5230K" or 5,230 Kilobytes of data (approximately 5.1 Megabytes) was included with the attachment. <u>Id.</u>

29.     On September 11, 2012 Ms. Roe contacted several other employees of the Employer, including Mr. Ren, seeking trusted opinions as to her options. At the time, Ms. Roe had considered Mr. Ren to be a close friend. She displayed the video to Mr. Ren on her iPhone.

30.     Upon viewing the video, Mr. Ren agreed to assist Ms. Roe in her efforts to hold the Supervisor accountable.

31.     Shortly after displaying the video to Mr. Ren on her iPhone device, the two agreed that the discussion should not take place at the workplace. Accordingly, Ms. Roe and Mr. Ren, along with another co-worker, drove to a local Applebee's restaurant, where, on information and belief, no one would understand their quiet private conversation being conducted in Chinese.

32.     During the meeting, Ren asked Ms. Roe to send him a copy of the video via email, noting that the evidence of the harassment would be lost if Roe's iPhone were lost or damaged. Despite her failed earlier efforts, Ms. Roe agreed, and attempted to send a copy of the video file to Ren via email, relying on his statements that the file would be used for backup purposes, only.

33.     On Tuesday, September 11, 2012, Ms. Roe attempted to send the video file to Ren via email at approximately 8:50 PM. See Exhibit #4, "Office disturbing ! Help" Email. Again, the attachment, "IMG_0999.MOV" was truncated by the email software. For this effort, only "5094K" or 5,094 Kilobytes of data (approximately 4.97 Megabytes) was included with the attachment. Id.

34.     Later on the same day, the two parties again made efforts to transfer the video. Ms. Roe and Mr. Ren had a text message conversation the same night, which suggested that there were technical problems with the transfer of the video, as well as voice transmission between the parties. See Exhibit #5, Text Messages.

35.     Ms. Roe stayed at Ren's home from September 12, 2012 until September 16, 2014.

36.     On September 16, 2012, Roe's boyfriend, C.M.[3], came to Ren's home to pick her up. As Roe and C.M. were preparing to leave Ren's home, Ren asked Roe to give him her iPhone.

---

[3] Initials are used to refer to this individual for purposes of the Complaint.

On information and belief, Ren made the request because he knew that the video had not been successfully transferred via email. Ren told Roe that he wanted to back up the video in case Roe lost her iPhone or deleted it by accident. Because Roe trusted Ren at the time, Roe agreed. C.M. and Roe were present at the time that Ren backed up the video onto his own device.

37.     On information and belief, Ren obtained the entire video file when he backed up the video on September 16, 2012. Ren's actions ensured that he had an entire copy available to him.

38.     After several days of additional thought, Ms. Roe retained third-party counsel and prepared to bring her claim with the EEOC. Although the video was shown to the EEOC, Ms. Roe did not provide a digital copy of the video to that organization. Shortly thereafter, Ms. Roe's claims against the Employer were settled privately.

39.     Ms. Roe was so protective of the video that her sexual harassment case was settled without showing the video to the Employer. In addition, Roe did not even display the video to her family members. Roe kept the video only as a "means of last resort" should it have been necessary to prove her version of the story.

40.     Ms. Roe did not use, share, display or publicly release the video for any purpose after her case was settled, consistent with her wishes to peacefully move on with her employment responsibilities after addressing the sexual harassment incident. Had Roe sought a market for the video, the fair market value would likely have exceeded $10,000 for a full transfer of all rights.

41.     On or about October 2012, Mr. Ren and a group of other plaintiffs retained Bernabei and B&W to represent them against the Employer. The Employee Lawsuit was subsequently filed in July of 2013.

42.     Almost immediately upon the filing of the Employee Lawsuit, and before any judgment had been made about the validity of the claims therein, Defendants began aggressively mounting an out-of-court public relations campaign against the Employer.

43.     On July 22, 2013, Bernabei issued a press release in Chinese. <u>See</u> Exhibit #6. A translation of the press release was also issued in English. <u>See</u> Exhibit #7. Lynne Bernabei was listed as the only contact for members of the press. <u>Id.</u>

44.     On information and belief, Bernabei and B&W received a copy of Plaintiff's video from Ren prior to the issuance of the press releases, sometime between October of 2012 and July 22, 2013.

45.     Thereafter, when contacted by inquiring members of the press, Bernabei and B&W provided reporters with digital copies of the video, without any authorization from Plaintiff, as well as a copy of the Complaint filed in Ren's matter.

46.     Numerous press outlets were drawn to Plaintiff's video, which provided substantial "click bait" for online articles based on the salacious nature of the content. The video was a key component in creating additional publicity for Defendants' for-profit lawsuit.

47.     On July 26, 2013, France 24 covered the story. <u>See</u> Exhibit #8, France24 Screenshot.

48.     Also on July 26, 2013, Hong Kong Standard covered the story. <u>See</u> Exhibit #9, Hong Kong Standard Screenshot (quoting Bernabei, who estimates that total damages in the Ren suit could "top US$2 million").

49.     On July 30, 2013, in support of their media campaign, B&W published a full copy of the Complaint in the Employer Lawsuit on its blog. <u>See</u> Exhibit #10, B&W Blog Post. Like the press releases, such publication was completely unnecessary and unrelated to Defendants' duties in the applicable Employee lawsuit judicial proceeding.

50.     On August 1, 2013, MotherJones.com issued an article about the matter. See Exhibit #11, MotherJones.com Screenshot (referring to Ms. Roe with the pseudonym "Anne," noting that the video was "reviewed by Mother Jones" and quoting B&W as a source).

51.     WUSA9 in Washington, D.C. had a news story on August 1, 2013. See Exhibit #12, WUSA9 Screenshot. The WUSA9 story is still available on its website. See Former Bureau Chief Allegedly Preyed on Female Interns and Reporters, available at http://www.wusa9.com/news/article/268898/373/Sex-Scandal-in-DC-inv (last visited July 22, 2014). Of particular note, the WUSA9 video story uses small portions of Plaintiff's video as provided by Defendants to that media outlet.

52.     On or about August 1, 2013, consistent with the timing of the other publications, Bernabei or B&W created or assisted in creating a microblogging account and corresponding website, on which the full version of the Plaintiff's video appears. See Exhibit #13, Microblog in Chinese.

53.     An English version, initially provided by a machine translation, is also attached. See Exhibit #14, Microblog in English. The microblog features a picture of Ms. Bernabei, links to B&W's website, and lists Bernabei's status as a Harvard Law School graduate. Id. As of July, 2014, the website continues to be displayed to the world. See Bernabei Microblog available at http://t.163.com/Bernabei (last visited July 22, 2014).

54.     In addition to displaying the full version of the video, Bernabei provides a separate translation of the Chinese language spoken in the video in a post on August 1, 2013. See Exhibit #15, Microblog Translation.

55.     Also on August 1, 2013, Bernabei provided Plaintiff's video to 163.com, a major Chinese Internet portal web site, and participated in an interview about the case. See Exhibit #16,

163.com Interview in Chinese. A machine-translated English version is also attached. See

Exhibit #17, 163.com Interview in English. Again, the material remains readily available to the

public on the Internet. See Bernabei Interview available at

http://zhenhua.163.com/13/0801/14/956TFFQH000464R2.html (last visited July 24, 2014).

56.     As with the microblog, the full version of Plaintiff's video is posted along with the

news story. Id. Ms. Bernabei also participates in an interview with a reporter, answering several

questions about the case and providing Plaintiff's full name to the reporter, which appears on the

same page that the video is posted. Id. On information and belief, Defendants participated in

numerous other similar interviews with different press outlets, which Plaintiff will pursue in

discovery.

57.     On information and belief, Defendants shared Plaintiff's video with numerous

members of the press and the public, without any express or implied authorization from Plaintiff.

58.     On information belief, Defendant Ren intentionally shared the video with Bernabei

and B&W for purposes of mounting the campaign against the Employer. Plaintiff is of the belief

that the video was shared by Ren with numerous other individuals. Mr. Ren also likely

associated Plaintiff's name with the video file to Bernabei, B&W and members of the press.

59.     Bernabei and B&W had the opportunity to prevent the video from being publicly

shared, but failed to do so. Moreover, Bernabei and B&W actively contributed to the unlawful

copying of the video.

60.     Plaintiff became aware of the video's release when she was contacted by colleagues,

friends, and members of the public that asked her about the video and her association with it.

61.     Undersigned counsel was retained in September of 2013. Per Ms. Roe's instructions, counsel made efforts to resolve the matter privately, and without judicial intervention. Defendants rebuffed any efforts to resolve the matter out of court.

62.     Ms. Bernabei and B&W, in particular, have outright denied that Roe has a valid copyright claim, and have maintained a consistent pattern of rejecting Roe's claims and denying that their actions were in any way improper.

63.     For example, on September 20, 2013, Bernabei wrote a letter to undersigned counsel, aggressively denying any wrongdoing. See Exhibit #18, Bernabei Letter. Ms. Bernabei's letter referred to Roe's proposed copyright claim as "frivolous and sanctionable." Later, in the same letter, Bernabei states that Roe's "threatened lawsuit would be frivolous." Id. Finally, Bernabei states that Roe's claims have "no legal justification" and refers to them as "meritless." Id.

64.     On information and belief, all of the Defendants are currently using the video for ongoing extra-judicial promotion of their Employee lawsuit.

65.     Bernabei and B&W regularly appear in press outlets, in large part due to numerous their numerous issued press releases about new and ongoing litigation. See Exhibit 19, Bernabei Profile. Bernabei also has a pattern of issuing press releases about B&W's cases.[4]

66.     Furthermore, Bernabei and B&W continue to participate in press activities regarding the ongoing litigation against the employer.[5] There is a substantial risk that Bernabei and B&W will continue a pattern of unabashedly using Roe's copyrighted material in their ongoing press

---

[4] See e.g. PRESS RELEASE: B&W Client Files Whistleblower Suit Against Arizona Town, available at http://bernabeipllc.com/2014/06/press-release-bw-client-files-whistleblower-suit-against-arizona-town/ (last visited July 24, 2014).
[5] See e.g. TV Network Reports on Harassment Claims Against Phoenix, available at http://bernabeipllc.com/2014/04/tv-network-reports-on-harassment-claims-against-phoenix/ (last visited July 24, 2014); see also New Tang Dynasty Airs Story on Phoenix Satellite Harassment, available at http://bernabeipllc.com/2014/05/new-tang-dynasty-airs-story-on-phoenix-satellite-harassment/ (last visited July 24, 2014).

efforts. Using third-party materials like Roe's video and aggressively engaging the press are part of Bernabei and B&W's regular way of doing business.

67.    Ms. Roe filed a suit in the D.C. Superior Court on October 30, 2013, seeking damages for invasion of her privacy. The case was captioned as: <u>Jane Doe v. Bernabei & Wachtel, PLLC, et al.</u>, No. 2013 CA 007393 B (D.C. 2013).[6]

68.    Roe's Superior Court complaint included copyright causes of action, in anticipation of Defendants' removal of the action to this Court. However, Plaintiff later agreed to the dismissal of the copyright claims in that action for separate pursuit. This action follows.

## CAUSES OF ACTION

69.    Plaintiff seeks redress as a result of Defendants' actions, as follows:

### Count One: Direct Copyright Infringement Against All Defendants

70.    Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

71.    Defendants are liable to Plaintiff for infringement of her copyrighted work subject to 17 U.S.C. §§ 101 et seq. (the "Copyright Act").

72.    Plaintiff is the owner of a registered copyright set forth on Exhibit #2, for the video entitled "Unwanted Attention" which constitutes an original work of authorship.

73.    Defendants copied and distributed entire portions of the work, or, alternatively, constituent elements of the work, to numerous third parties in furtherance of its public relations campaign against the Employer.

74.    Plaintiff did not authorize, permit or consent to Defendant's distribution of her Work.

75.    Wherefore, Plaintiff Roe seeks damages and injunctive relief.

---

[6] The matter is ongoing and is currently pending appeal before the D.C. Court of Appeals.

**Count Two: Contributory Copyright Infringement Against All Defendants**

76.      Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

77.      Prior jurisprudence explains that "one infringes contributorily by intentionally inducing or encouraging direct infringement."[7] Furthermore, an individual may be infringing "vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it."[8]

78.      Even where Defendants did not directly copy the Work, each Defendant had the opportunity to stop or limit the publication of the Work. Each Defendant, knew, or should have known, that the Work was being published to numerous third parties in furtherance of the Defendants' public relations campaign against the Employer.

79.      Wherefore, Plaintiff Roe seeks damages and injunctive relief.

**Count Three: Civil RICO Violations Against All Defendants**

80.      Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

81.      Pursuant to 18 U.S.C. §§ 1961(1) and 1964(c), proof of civil RICO liability for copyright infringement requires that a plaintiff establish (A) the predicate act of criminal copyright infringement by the defendant and (B) the elements of one of four possible bases for RICO liability.

82.      To demonstrate criminal copyright infringement, a plaintiff in a civil RICO case must first prove the elements of a civil copyright infringement claim.[9] Second, plaintiff must demonstrate two additional elements: (a) that the copyright was infringed willfully and (b) that

---

[7] See MGM Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (U.S. 2005) (citing Gershwin Pub. Corp. v. Columbia Artists Management, Inc., 443 F.2d 1159, 1162 (CA2 1971).
[8] Id.
[9] "Reduced to most fundamental terms, there are only two elements necessary to the plaintiff's case in an infringement action: ownership of the copyright by the plaintiff and copying by the defendant." Nimmer and Nimmer, Nimmer on Copyright § 13.09 (2010).

such infringement was done for profit or involved reproduction or distribution of one or more

copies that exceeded $1,000 in value during any 180-day period, or constituted a public

distribution over a computer network of a work known to be intended for commercial

distribution.[10]

83.     To demonstrate liability under RICO, a plaintiff must prove that there is "an

enterprise," engaging in "racketeering activity" that occurs in a "pattern."[11] An "enterprise"

includes "any individual, partnership, corporation, association, or other legal entity, and any

union or group of individuals associated in fact although not a legal entity."[12] "Racketeering

Activity," includes, among other things "criminal infringement of a copyright."[13] Finally, a

"pattern" of racketeering activity means "at least two acts of racketeering activity, the last two of

which occurred within ten years of each other."[14]

84.      In the present matter, Defendants willfully infringed Plaintiff's copyright. Every

Defendant knew to whom the video belonged, every Defendant had the opportunity to preclude

the video from being shared publicly, and every Defendant made the conscious decision to

release the video to members of the press.

85.     Moreover, the Defendants infringed Plaintiff's video for the purposes of increasing

their own profits. Most notably, Defendants released the video in an effort to use "the court of

public opinion" against the Employer in the Employee Lawsuit. Given that Bernabei and B&W

are almost certainly representing their clients on a contingency basis, a quicker and more

efficient settlement would have the effect of creating substantial profit for Bernabei, B&W and

---

[10] Criminal infringement is virtually identical to a civil infringement claims, with the additional requirements of willfulness and intent to profit, though the amount of any profit is not generally scrutinized. See generally Nimmer and Nimmer, Nimmer on Copyright § 13.09 (2010).
[11] 18 U.S.C. § 1962 (2010).
[12] 18 U.S.C. § 1961(4).
[13] 18 U.S.C. § 1961(1)(B).
[14] 18 U.S.C. § 1961(5).

Ren. Moreover, Defendants Bernabei and B&W also benefitted from the substantial press coverage they received, creating long-term benefits and profits for their law practice.

86.     Alternatively, distribution of the video resulted in $1,000 in value during any 180-day period, because (a) the video had potential economic value to Plaintiff that the public dissemination effectively eliminated, and (b) the video created press and promotional coverage that was worth $1,000 in value to Bernabei and B&W.

87.     In the present matter, Ren, Bernabei and B&W are an "enterprise" because they are in an association that shares a common interest, namely, the hope of a financial benefit from the Employee Lawsuit. Each of the Defendants' interests are aligned, and each Defendant stands to profit from the unlawful use of Plaintiff's copyrighted material.

88.     In addition, B&W is an enterprise, in and of itself, because it is a legal entity in-fact. The entity, and the individuals acting within it, shares a common interest of running a profitable law firm and winning lawsuits they file on behalf of their clients.

89.     The Defendants are engaged in a "racketeering activity" because they are engaged in conduct that meets the legal definition of "criminal infringement of a copyright" as discussed more fully above.

90.     Finally, Defendants are engaged in a "pattern" because they engaged in at least two acts of racketeering activity, the last two of which occurred within ten years of each other. Specifically, Defendants took numerous intentional actions that were designed to unlawfully publish and copy profit from Plaintiff's video file. Moreover, the acts are related and amount to or pose a threat of continued criminal activity.

91.     In July and August of 2013, Defendants released the video to numerous press outlets, as set out above. On information and belief, Defendants intentionally released Plaintiff's video to

as many as fifty press outlets, including the outlets set out above. All of the acts were related, because they involved third party material and were promoted via Defendants' aggressive press outreach.

92.     On information and belief, Defendants are, to this day, continually using the video for their own promotional purposes. As of the date of this writing, Roe's video apparently continues to be employed on a website owned and controlled by Bernabei and B&W. See Exhibits #13, 16. Indeed, Defendants' actions continue to ensure that Roe's video is unlawfully available on the Internet on a daily basis. Defendants' ongoing use of Roe's video has extended to a period of approximately a year, a substantial period of time.

93.     Alternatively, as discussed more fully above, there are serious threats that the conduct will continue, because the predicate acts are part of Bernabei and B&W's regular way of doing business. Specifically, Bernabei and B&W aggressively inject their legal work in the public sphere on many of their cases, Bernabei and B&W are continually issuing promotional materials about the case in question, and Bernabei and B&W have made it clear that they do not accept Roe's copyrights in her video file because they have referred to Roe's copyright claims as "meritless," "frivolous," and "sanctionable." See Exhibit #18.

94.     Wherefore, Plaintiff Roe seeks damages and injunctive relief.

**Count Four: Computer Fraud and Abuse Act, Against Defendant Ren**

95.     Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

96.     18 USCS § 1030(g) provides that "any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief . . . if the conduct involves 1

of the factors set forth in subclauses [subclause] (I), (II), (III), (IV), or (V) of subsection

(c)(4)(A)(i)."

97.      18 USCS § 1030(e)(11) defines the term "loss" to mean "any reasonable cost to any

victim, including the cost of responding to an offense, conducting a damage assessment, and

restoring the data, program, system, or information to its condition prior to the offense, and any

revenue lost, cost incurred, or other consequential damages incurred because of interruption of

service."

98.      In the present matter, Defendant Ren "intentionally accessed a computer" and

exceed[ed] authorized access," thereby obtaining information, namely the copywritten video,

from Roe's iPhone, a protected computer. 18 USC §1030(a)(2)(c).

99.      Moreover, Ren's unauthorized access furthered his fraud and allowed him to obtain

something of value, namely the copyrighted video. 18 USC §1030(a)(4).

100.      Ren's actions created a "loss to 1 or more persons during any 1-year period . . .

aggregating at least $ 5,000 in value." 18 USC §1030(c)(4)(A)(i)(1).

101.      Plaintiff Roe incurred substantial costs in responding to Ren's offense. Among other

things, Roe has incurred attorney's fees, copyright registration fees, court filing fees and

numerous other costs in excess of $5,000 in combating Ren's excessive authorization. Roe also

lost any economic value the video may have had on the marketplace because the video has been

published in numerous places on the Internet. The video's fair market value exceeds $10,000.

102.      Defendant Ren is liable subject to 18 USCS § 1030(a)(4)  because he "knowingly and

with intent to defraud, accesse[d] a protected computer" and exceeded authorized access by

accessing the video file in a media-playable form, copying the work, and subsequently

participating with Bernabei and B&W in spreading the work across the Internet.

18

103.    Moreover, "by means of such conduct," Ren furthered the intended fraud and obtained something of value, namely the video file, and the value of the Defendants' use exceeded $5,000 in any 1-year period.

104.    Wherefore, Plaintiff Roe seeks damages and injunctive relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiff seeks the following relief:

1.    An award for damages in an amount to be proven at trial, in an amount not less than $100,000;

2.    An award of all economic, monetary, actual, consequential, statutory and compensatory damages caused by Defendants' conduct, and if their conduct is proven willful, award Plaintiff exemplary damages;

3.    Disgorgement or restitution by Defendants of all revenue earned from the fraudulent and unlawful practices described herein;

4.    An award of punitive damages, in an amount to be proven at trial;

5.    An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff, including an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

6.    An award to Plaintiff of her reasonable litigation expenses and attorneys' fees;

7.    An award to Plaintiff of pre-judgment and post-judgment interest, to the extent allowable; and

8.    Such further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff respectfully demands a trial by jury with respect to each claim in this Complaint.

Respectfully submitted,                                    Dated: July 28, 2014

_____
Eric J. Menhart (Bar ID: 975896)
Lexero Law
10 G St NE Suite 710
Washington, D.C. 20002
Phone: 855-453-9376
Fax: 855-453-9376
Eric.Menhart@Lexero.com