**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANE ROE, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 1:14-cv-01285 (BAH) |
| | ) |
| BERNABEI & WACHTEL, PLLC, *et al.*, | ) |
| | ) |
| Defendants | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANT MEIXING REN'S**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**Table of Contents**

I.      Introduction      .      .      .      .      .      .      .      .      .      1

II.     Factual and Procedural Background   .      .      .      .      .      .      2

III.    Standard of Review   .      .      .      .      .      .      .      .      4

IV.     Argument      .      .      .      .      .      .      .      .      .      4

    A.    This Court Lacks Subject Matter Jurisdiction Because Plaintiff Failed to
          Move for Leave to Proceed Under a Pseudonym When Filing Her Complaint   4

    1.    Without Subject Matter Jurisdiction, This Court Cannot Address the Merits   4

    2.    This Court Should Deny any Request by Plaintiff to Proceed Anonymously   7

    B.    The Copyright and RICO Claims Should be Dismissed under Rule 12(b)(6)   9

    C.    Plaintiff Fails to State Claims Under the Computer Fraud and Abuse Act   10

    1.    Plaintiff's Claim Should Be Dismissed under Both Section 1030(a)(2) and
          Section 1030(a)(4) Because Plaintiff Pled That Mr. Ren Had Authorization
          to Access Her iPhone to Copy the Video File   .      .      .      .      11

    2.    Plaintiff Failed to Allege That Mr. Ren Lacked Access Authorization   .      13

    3.    Even if this Court Adopted the Seventh Circuit's Broad Construction of the
          CFAA, Plaintiff Has Still Failed to Allege a Violation of the CFAA   .      14

    4.    Plaintiff Has Failed to Plead Allowable Damages or Loss in Excess of $5,000
          That are Recognized Under the CFAA, a Prerequisite for Her Claims   .      16

V.      Conclusion      .      .      .      .      .      .      .      .      .      18

I.      **Introduction.**

Defendant Meixing Ren, through undersigned counsel, submits his Memorandum of Points and Authorities in support of his Motion to Dismiss Plaintiff's Complaint.[1]

As set forth below, this Court should dismiss the Complaint under Rules 12(b)(1) and 12(h)(3), Fed. R. Civ. P., for lack of subject matter jurisdiction, because her counsel failed to move for leave to proceed under a pseudonym in this Court, so that there is no known plaintiff before this Court over which this Court can exercise jurisdiction.

This Court should further dismiss the Complaint under Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim.  The Computer Fraud and Abuse Act claim (Count Four) was brought solely against Mr. Ren based on his accessing her iPhone in order to copy a cell phone video that she used to support her own discrimination complaint.  Count Four fails to state a claim because Ms. Roe expressly authorized Mr. Ren to access her iPhone in order to copy the video, but this statute only proscribes unauthorized access.  Further, she fails to allege that his authorized access caused any damage or impairment to her iPhone, another prerequisite for this claim.

As set forth in the motion to dismiss of defendants Bernabei & Wachtel, PLLC and Lynne Bernabei (ECF No. 8) (Aug. 26, 2014), which is adopted herein by reference, the copyright infringement claims, brought against all three defendants (Counts One and Two) fail to state a claim as (1) the D.C. Superior Court's findings that the video had no value, based on plaintiff's desire to keep the video private, collaterally estop plaintiff from bringing those claims; (2) the video lacks originality or creativity, the prerequisite for copyright protection; (3) the statutory fair use doctrine supports the informational use of the video; (4) the untimely registration of the copyright precludes statutory damages or attorneys' fees; and (5) plaintiff has

---

[1] The Complaint is incorrectly captioned as a D.C. Superior Court filing.

suffered no actual damage and there was no commercial use of the video.

The RICO claim (Count Three) similarly fails to state a claim because (1) without a copyright infringement claim, there is no predicate act for a RICO claim; (2) plaintiff has no standing as RICO does not cover personal injuries, including reputational harm or emotional distress; (3) there is no actionable RICO "pattern" as this claim involves only one video and only one alleged victim; (4) there is no actionable RICO "enterprise" as the complaint alleges that the enterprise and the defendants are one and the same.

## II.    Factual and Procedural Background.[2]

Plaintiff's complaint against Mr. Ren reflects a vendetta against him and his attorneys, initiated after they brought suit against Ms. Roe's and Mr. Ren's employer, Phoenix Satellite Television, a large Chinese media corporation with bureaus in Washington, D.C. and elsewhere. Mr. Ren and his co-workers alleged that they helped out Ms. Roe with her own discrimination complaint, and that after Phoenix settled with Ms. Roe, Phoenix then retaliated against Mr. Ren and his co-workers for their support of her. *See Ren, et al. v. Phoenix Satellite Television (US), Inc.* No. 13-cv-01110-TSC (D.D.C.) (this case is currently in discovery).

Ms. Roe first sued Mr. Ren and his attorneys in the D.C. Superior Court, alleging a laundry list of privacy and other common-law torts, along with two copyright infringement claims. *See Roe v. Bernabei & Wachtel, PLLC, et al.*, No. 2013 CA 007393 (D.C. Super. Ct. Oct. 28, 2013). D.C. Superior Court Judge Ross, after two motions hearings, dismissed all of the common-law claims for failure to state a claim under Rule 12(b)(6); plaintiff voluntarily dismissed her copyright infringement claims after Mr. Ren's counsel advised Ms. Roe's counsel

---

[2] Mr. Ren adopts the factual discussion set forth in the brief filed by Bernabei & Wachtel, PLLC and Ms. Bernabei. Herein he provides a summary in order to provide context for the limited facts pled by Ms. Roe against him.

that the federal courts have exclusive subject matter jurisdiction for copyright infringement claims.  Undeterred, Ms. Roe appealed the dismissal of five of the common-law claims to the D.C. Court of Appeals (she did not appeal the dismissal of the fraud claims against Mr. Ren).  She re-filed the copyright infringement claims in this Court, along with a RICO claim, and a claim solely against Mr. Ren under the Computer Fraud and Abuse Act.

Ms. Roe's factual allegations as to Mr. Ren are few.  On September 6, 2012, she turned on her cell phone and placed it in her purse so that it would passively record a meeting with her supervisor; during that meeting, the supervisor harassed her.  *See* Compl. ¶¶ 19-24.  One week later, "Ms. Roe contacted several other employees of the Employer, including Mr. Ren, seeking trusted opinions as to her options.  At the time, Ms. Roe had considered Mr. Ren to be a close friend.  She displayed the video to Mr. Ren on her iPhone." *Id.* ¶ 29.  "Upon viewing the video, Mr. Ren agreed to assist Ms. Roe in her efforts to hold the Supervisor accountable," *id.* ¶ 30; she, Mr. Ren, and another co-worker discussed the video at a local restaurant.  *Id.* ¶ 31.  Ms. Roe then "agreed" with Mr. Ren's request to send him the video by email, and she "attempted to send a copy of the video file to [Mr.] Ren by email." *Id.* ¶¶ 32-33.  The email makes clear that she did not include any instructions to him, or limitations on his use of the video.  *See* Compl., Ex. 4.

Over the next several days, "Ms. Roe stayed at [Mr.] Ren's house from September 12, 2012 until September 16, 2014 [*sic*, 2012].  *See* Compl. ¶ 35.  On September 16, 2012, Ms. Roe agreed to allow Mr. Ren to access her iPhone in order to "back up the video in case [Ms.] Roe lost her iPhone or deleted it by accident," and she did so because she "trusted [Mr.] Ren at the time." *Id.* ¶ 36.  Ms. Roe and her boyfriend "were present at the time that [Mr.] Ren backed up the video onto his own device." *Id.*

Ms. Roe also admitted that "the video was shown to the EEOC" when she met with the

EEOC, and that she subsequently settled her claims against Phoenix.  *Id.* ¶ 38.

Ms. Roe admits, as she must, that Mr. Ren and his co-workers sued Phoenix in July 2013 for having retaliated against them for "assisting Ms. Roe with her sexual harassment complaint with the EEOC."  *See* Compl. ¶¶ 5, 41.

### III.      Standard of Review.

Mr. Ren adopts the Standard of Review section as set forth in the motion to dismiss filed by Bernabei & Wachtel, PLLC and Ms. Bernabei.

### IV.      Argument.

### A.      This Court Lacks Subject Matter Jurisdiction Because Plaintiff Failed to Move for Leave to Proceed Under a Pseudonym When Filing Her Complaint.

This Court must dismiss Ms. Roe's complaint, pursuant to Rules 12(b)(1) and 12(h)(3), Fed. R. Civ. P., for lack of subject matter jurisdiction, because her counsel never moved for leave to proceed under a pseudonym in this Court, so that there is no known plaintiff before this Court over which this Court can exercise jurisdiction.

### 1.      Without Subject Matter Jurisdiction, This Court Cannot Address the Merits.

It is settled law that subject matter jurisdiction is a prerequisite before this Court can proceed any further with a plaintiff's complaint:  "Questions of jurisdiction, of course, should be given priority – since if there is no jurisdiction there is no authority to sit in judgment of anything else."  *Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 778 (2000). Absent subject matter jurisdiction, this Court must dismiss the claim under Rule 12(b)(1) ("lack of subject matter jurisdiction") and Rule 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  The rationale is that:

> Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.

*Vermont Agency*, 529 U.S. at 778-79 (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)).

As the D.C. Circuit recently held, "every federal court has a 'special obligation to satisfy itself' of its own jurisdiction before addressing the merits of any dispute." *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1362 (D.C. Cir. 2012) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)).  Further, "the plaintiff bears the burden of establishing that the court has [subject matter] jurisdiction." *Hunter v. Rice*, 480 F. Supp. 2d 125, 131 (D.D.C. 2007) (dismissing Equal Pay Act claims for lack of subject matter jurisdiction).

Although the courts in this jurisdiction have not yet addressed this question, appellate courts in other circuits have held that the failure of a plaintiff to seek leave to proceed under a pseudonym at the time the federal complaint is filed precludes the district court from exercising subject matter jurisdiction.  The Tenth Circuit stated this clear-cut principle long ago:

> **In this case, the unnamed plaintiffs have made no request to the district court for permission to proceed anonymously**, nor have they otherwise disclosed their identities to the court or to the defendants.  **Absent permission by the district court to proceed anonymously**, and under such other conditions as the court may impose (such as requiring disclosure of their true identity under seal), **the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them**.  We therefore dismiss the complaint as to the unnamed [plaintiffs].

*National Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989) (emphasis added).  The Tenth Circuit reiterated this principle more recently:

> **When a party wishes to file a case anonymously or under a pseudonym, it must first petition the district court for permission to do so**.  If a court grants permission, it is often with the requirement that the real names of the plaintiffs be disclosed to the defense and the court but kept under seal thereafter.  Where no permission is granted, "the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them."

*W.N.J. v. Yocom*, 257 F.3d 1171, 1172 (10th Cir. 2001) (emphasis added) (quoting *National*

*Commodity*, 886 F.2d at 1245).  The Tenth Circuit concluded, "because the district court never had jurisdiction over the plaintiffs when it granted defendants' motion for summary judgment, we have no authority to consider an appeal of that decision."  *Id.* at 1173 (dismissing appeal).

The Sixth Circuit similarly upheld the dismissal of a "John Doe" plaintiff:

> Ordinarily, a plaintiff wishing to proceed anonymously files a protective order that allows him or her to proceed under a pseudonym.  **In this case, however, the docket sheet does not reflect any motion or proceeding dealing with whether the three anonymous plaintiffs could proceed under pseudonyms.  Failure to seek permission to proceed under a pseudonym is fatal to an anonymous plaintiff's case**, because, as the Tenth Circuit has held, "the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them."

*Citizens for a Strong Ohio v. Marsh*, 123 Fed. Appx. 620, 637 (6th Cir. 2005) (emphasis added) (quoting *National Commodity*, 886 F.2d at 1245).  The U.S. District Court for the Northern District of Alabama is in accord:

> Like the plaintiffs in *Yocom*, the plaintiffs in this case failed to seek leave to proceed anonymously.  Thus, this court does not have jurisdiction over the unnamed plaintiffs because of this procedural error.  Accordingly, the court grants Defendants' Motion to Dismiss First Amended Complaint as to all unnamed plaintiffs.

*Estate of Rodriquez v. Drummond Co.*, 256 F. Supp. 2d 1250, 1256 (N.D. Ala. 2003) (citing *Yocom*, 257 F.3d at 1172-73).

Here, the docket sheet for this case is conspicuously silent – while Ms. Roe's counsel electronically docketed the complaint in this Court's ECF system, at no time did her counsel ever move for leave to proceed under a pseudonym.  That fatal omission means that this Court still does not know who the Plaintiff is – so that this Court does not have subject matter jurisdiction over the claims brought by this anonymous plaintiff.

Without subject matter jurisdiction, this Court cannot even consider the defendants'

motions to dismiss for failure to state a claim.  Under Rules 12(b)(1) and 12(h)(3), this Court

must dismiss the Complaint for lack of subject matter jurisdiction.

### 2.   <u>This Court Should Deny any Request by Plaintiff to Proceed Anonymously.</u>

Even if this Court were to consider a belated request that Plaintiff be allowed to proceed

under a pseudonym, it must find that under the standards developed by the courts in this

jurisdiction, she will be unable to satisfy the stringent requirements.  Thus, it would be futile to

grant her leave to file a motion to proceed under a pseudonym.

As a threshold matter, Rule 10(a), Fed. R. Civ. P., requires that:  "The title of the

complaint must name all the parties."  The Local Civil Rules of this Court similarly require that

"The first filing by or on behalf of a party shall have in the caption the name and full residence

address of the party."  LCvR 5.1(c)(1); *accord* LCvR 11.1.  Here, the title to the Complaint does

<u>not</u> name all the parties, since the Complaint only uses "Jane Roe."  Moreover, the title to the

complaint does <u>not</u> give "the full residence address of" Ms. Roe, and instead gives her attorney's

work address.  Thus, this failure to provide this information mandates dismissal under Local

Civil Rules 5.1(c)(1) and 11.1.

As Judge Lamberth explained, these rules "require that complaints state the names of

parties; they make no provision for pseudonymous litigation."  *Qualls v. Rumsfeld*, 228 F.R.D. 8,

10 (D.D.C. 2005) (denying motion for leave to proceed pseudonymously).  The rationale is that

"requiring parties to disclose their identities furthers the public's interest in knowing the facts

surrounding judicial proceedings."  *Id.*  Further, requiring parties to be named will exclude the

filing of "frivolous and less heartfelt causes, which is in the interest of both the public and the

courts."  *Id.* at 12.  Hence, the plaintiff has the burden to justify proceeding under a pseudonym:

> More important, however, Doe plaintiffs have failed to perceive that federal
> courts operate openly by default and that **a defendant facing a pseudonymous**

> **plaintiff need not come forward with reasons why this default procedure
> should be followed**.  Pseudonymous litigation is for the unusual or critical case,
> and **it is the litigant seeking to proceed under pseudonym that bears the
> burden to demonstrate a legitimate basis for proceeding in that manner.**

*Id.* (emphasis added).  The D.C. Circuit, in holding that it was reversible error for the district

court to allow *amici* to proceed anonymously in an antitrust case, stated that:

> **Indeed, parties to a lawsuit must typically openly identify themselves in their
> pleadings to "protect[] the public's legitimate interest in knowing all of the
> facts involved, including the identities of the parties.**"  *Doe v. Frank*, 951 F.2d
> 320, 322 (11th Cir. 1992).  "Basic fairness dictates that those among the
> defendants' accusers who wish to participate . . . as individual party plaintiffs
> must do so under their real names."  *Southern Methodist Univ. Ass'n of Women
> Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979).

*United States v. Microsoft Corp.*, 56 F.3d 1448, 1463-64 (D.C. Cir. 1995) (*per curiam*)

(emphasis added).

Judge Lamberth explained the "ad hoc" procedure by which a litigant may seek to

proceed under a pseudonym:

(1) The litigant "may ask the Chief Judge, *ex parte*, for leave to file a complaint omitting
the litigant's real name and full address."

(2) "If the Chief Judge grants leave to file, the litigant may then file a pseudonymous
complaint and the case will be assigned to a judge."

(3) The "Chief Judge's leave to file is only given 'at this time,' and does not guarantee
that a litigant may proceed pseudonymously throughout the case . . . leaving the issue
open to full, adverse litigation at a later date."

*Qualls*, 228 F.R.D. at 10.  In other words, permission to proceed under a pseudonym must be

obtained <u>before</u> filing the federal complaint.  That did not happen here – Ms. Roe's counsel

unilaterally docketed her federal complaint without seeking leave from the Chief Judge.

Even if Ms. Roe were to seek belated permission for leave to proceed under a

pseudonym, this Court would find that such an effort would be futile.  As Judge Collyer

explained, it is a "rare dispensation" to grant leave to proceed pseudonymously, and such

permission is generally limited to cases "where the issues are 'matters of a sensitive and highly

personal nature such as birth control, abortion, homosexuality or the welfare rights of illegitimate

children or abandoned families.'"  *Doe v. Von Eschenbach*, No. 06-2131 (RMC), 2007 WL

1848013, at *1 (D.D.C. June 27, 2007) (quoting *Southern Methodist*, 599 F.2d at 712-13).  These

issues are <u>not</u> present in Ms. Roe's Complaint.

Judge Lamberth similarly recognized that absent a "physical injury or the fear or threat of

physical injury," a mere "threat of economic harm alone does not generally permit a court to let

litigants proceed under pseudonyms." *Qualls*, 228 F.R.D. at 11.  Here, at most, Ms. Roe can

only allege embarrassment or scrutiny, which is insufficient:

> The Court understands that bringing litigation can subject a plaintiff to scrutiny
> and criticism and can affect the way plaintiff is viewed by coworkers and friends,
> **but fears of embarrassment or vague, unsubstantiated fears of retaliatory**
> **actions by higher-ups do not permit a plaintiff to proceed under a**
> **pseudonym**. *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) ("The risk that a
> plaintiff may suffer some embarrassment is not enough."); *S. Methodist U. Ass'n*
> *of Women Law Students*, 599 F.2d at 713 (denying Title VII plaintiffs opportunity
> to proceed under pseudonym, because they "face no greater threat of retaliation
> than the typical plaintiff alleging Title VII violations").

*Qualls*, 228 F.R.D. at 11 (emphasis added).

Therefore, under *Doe* and *Qualls*, it would be futile to allow Ms. Roe to proceed under a

pseudonym, so this Court should not grant leave to file a motion to proceed pseudonymously.

### B.   <u>The Copyright and RICO Claims Should be Dismissed under Rule 12(b)(6).</u>

Mr. Ren adopts by reference the arguments made by co-defendants Bernabei & Wachtel,

PLLC and Ms. Bernabei in their Motion to Dismiss, which explained why plaintiff's copyright

infringement claims (Counts 1 and 2) and RICO claim (Count 3) failed to state a claim.

**C.**       **Plaintiff Fails to State Claims Under the Computer Fraud and Abuse Act.**

This Court should dismiss Count Four, brought solely against Mr. Ren, because Plaintiff has failed to state her claim(s) under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* ("CFAA").  The courts have consistently recognized that the CFAA "was designed primarily to deter computer hacking."  *Lewis-Burke Assocs. LLC v. Widder*, 725 F. Supp. 2d 187, 194 (D.D.C. 2010).[3]  Yet, Plaintiff alleges that Mr. Ren violated the CFAA by copying a file from her iPhone, with her permission and in her presence, and then attempts to claim a broad array of consequential damages, all without alleging that Mr. Ren's access caused her iPhone any damage or impaired her use of it, which are threshold requirements for a CFAA claim.

Plaintiff brings her CFAA claim (Count Four) pursuant to 18 U.S.C. § 1030(a)(2)(c), which proscribes access to a protected computer without authorization or exceeding authorized access, and pursuant to 18 U.S.C. § 1030(a)(4), a separate provision that proscribes unauthorized access furthering an intent to defraud.  Because both provisions expressly require access without authorization or access that exceeded authorization, the CFAA claims against Mr. Ren fail.

To violate the CFAA, Mr. Ren must have "(1) intentionally accessed a computer, (2) without authorization or exceeding authorized access, and that he (3) thereby obtained information (4) from any protected computer (if the conduct involved an interstate or foreign communication), and that (5) there was loss to one or more persons during any one-year period aggregating at least $5,000 in value." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009).  Plaintiff must also plead an intent to defraud, and access in furtherance of the fraud, to maintain her Section 1030(a)(4) claim.

---

[3] *See also United States v. Nosal*, 676 F.3d 854, 857 (9th Cir. 2012) (*en banc*) ("The government's interpretation would transform the CFAA from an anti-hacking statute into an expansive misappropriation statute.").

The Court must dismiss Plaintiff's CFAA claim, because she has expressly pled that she gave him specific permission to access the video, has failed to allege any basis for a finding of hostile or fraudulent intent at the time of access, and has failed to allege a threshold amount of $5,000 in loss or damages that are recognized under the CFAA, which is a statutory predicate for bringing the claim.

1. **Plaintiff's Claim Should Be Dismissed under Both Section 1030(a)(2) and Section 1030(a)(4) Because Plaintiff Has Pled That Mr. Ren Had Authorization to Access Her iPhone to Copy the Video File.**

The CFAA prohibits "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] ... information from any protected computer."  18 U.S.C. § 1030(a)(2).  The anti-fraud provision similarly requires that the defendant "knowingly and with intent to defraud, *accesses a protected computer without authorization, or exceeds authorized access*, and by means of such conduct furthers the intended fraud and obtains anything of value." 18 U.S.C. § 1030(a)(4) (emphasis added).  Thus Ms. Roe's claim, whether brought under either provision, requires pleading that Mr. Ren either lacked authorization to access her iPhone or that his access exceeded his authorization to do so.[4]

The D.C. Circuit has not yet adopted a construction of the terms "without authorization" but several other circuits have reached two interpretations of what "authorization" means under the CFAA.  The Ninth Circuit in *LVRC Holdings LLC  v. Brekka*, 581 F.3d 1127 (9th Cir. 2009), construed the term narrowly, to refer only to an individual's access of a protected computer when they had no permission to do so or the access went beyond the scope of permission granted: "[F]or purposes of the CFAA, when an employer authorizes an employee to use a company computer subject to certain limitations, the employee remains authorized to use the computer

---

[4] Count Four actually combines two different statutory claims under a single count.

even if the employee violates those limitations." *Brekka,* 581 F.3d at 1133. This approach has been endorsed by the Ninth Circuit sitting *en banc*, the Fourth Circuit, and another judge in this Court in *Widder.  See Nosal*, 676 F.3d at 862-63; *WEC Carolina Energy Sols. v. Miller*, 687 F.3d 199, 203 (4th Cir. 2012); *Widder*, 725 F. Supp. 2d at 193.

      Although not changing the outcome of this case, the Seventh Circuit and the courts that follow its standard have construed "authorization" more broadly, such that an individual violates the CFAA if he or she accesses the computer with an intent that is adverse or hostile to the individual who granted permission.  *See Int'l Airport Ctrs., LLC v. Citrin*, 440 F.3d 418, 420-21 (7th Cir. 2006) (former employee's "breach of his duty of loyalty terminated his agency relationship . . . and with it his authority to access the laptop"); *see also United States v. John*, 597 F.3d 263, 271-73 (5th Cir. 2010) (upholding conviction under CFAA because credit card company employee exceeded authorization when she retrieved customer information with the intent to defraud the customers); *NCMIC Fin. Corp. v. Artino*, 638 F. Supp. 2d 1042, 1059-61 (S.D. Iowa 2009) (concluding that once employee developed intent disloyal to employer, this change in intent revoked employee's authorization to access customer information, making such access a violation of the CFAA).  Under this construction, the defendant violates the CFAA once he or she has become disloyal or developed interests adverse to the computer's owner, because this severs any agency relationship and thus revokes the defendants' authorization to access the computer.  Whether the owner of the computer has revoked his or her permission is immaterial under this approach; it focuses on the defendant's intent at the time of access.

      However, the analysis that this Court adopts in this case will not change the outcome. Under the narrow construction of authorization endorsed by *Widder*, the Ninth Circuit and the Fourth Circuit, Ms. Roe failed to allege a violation of the CFAA because she expressly gave Mr.

Ren permission to access her iPhone and copy the file in order to support her EEOC charge.  *See* Compl. ¶ 36.  Even if the Court grants Plaintiff the broader reading, Ms. Roe still failed to plead that Mr. Ren lacked authorization because she has not alleged that he had any disloyal intent at the time of access.

### 2.   **Plaintiff Failed to Allege That Mr. Ren Lacked Access Authorization.**

The *Brekka* line of cases, including Magistrate Judge Facciola's analysis in *Widder*, focus only on whether the plaintiff had granted the defendant permission to access the protected computer at the time of access.  *Nosal*, 676 F.3d at 863; *Miller*, 687 F.3d at 206-07 (rejecting CFAA claim because defendant was alleged to have "had access to [plaintiff's] intranet and computer servers"); *Widder*, 725 F. Supp. 2d at 194 ("Whether Widder had permission to copy documents onto his thumb drive or to subsequently use the data from a non-Lewis Burke computer, after he had left its employ, is not a question that relates to his liability under the CFAA.  'Exceeds authorized access' should not be confused with exceeds authorized use.").  Whether Mr. Ren had any intent to use the information retrieved from the computer for his or her own purposes is irrelevant, so long as Ms. Roe originally granted Mr. Ren access to the information and had not rescinded that grant of permission.

The Ninth Circuit, the Fourth Circuit, and this district in *Widder* have further concluded that this narrow reading of the CFAA is more appropriate because it adheres to the rule of lenity – the principle that a statute which imposes criminal liability (as the CFAA does) should not be read to reach a broader array of conduct than the statute's text explicitly requires.  *See Miller*, 687 F.3d at 204-06; *Nosal*, 676 F.3d at 863-64.  As Magistrate Judge Facciola explained:

> Congress could not have intended a person's criminal and civil liability to be so
> fluid, turning on whether a person's interests were adverse to the interests of an
> entity authorizing the person's access . . . . Such an interpretation is not only
> confusing, but antithetical to the rule of lenity, which forbids the Court from

> "'interpret[ing] a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.'"

*Widder*, 725 F. Supp. 2d at 194 (citations omitted).

If this Court adopts the narrow construction of the CFAA, Plaintiff's CFAA claim must be dismissed.  Plaintiff specifically alleges that she gave Mr. Ren permission to access her iPhone and to copy the video file contained therein:

> On information and belief, Ren made the request because he knew that the video had not been successfully transferred via email.  Ren told Roe that he wanted to back up the video in case Roe lost her iPhone or deleted it by accident.  Because Roe trusted Ren at the time, Roe agreed.  C.M. and Roe were present at the time that Ren backed up the video onto his own device.

*See* Compl. ¶ 36.  Plaintiff cannot maintain a CFAA claim premised on unauthorized access or access which exceeded permission when she expressly pled that Mr. Ren asked to access her iPhone to copy the video and she granted him that access.  She has not pled that Mr. Ren's conduct exceeded the scope of that grant of permission – copying the video file is precisely what she authorized him to do.  Plaintiff's objections about how Mr. Ren later used the video are not cognizable claims under the CFAA, and so neither her Section 1030(a)(2) nor her Section 1030(a)(4) claims are properly pled under the *Brekka* standard.

### 3.    Even if this Court Adopted the Seventh Circuit's Broad Construction of the CFAA, Plaintiff Has Still Failed to Allege a Violation of the CFAA.

Even under the *Citrin* standard, Plaintiff fails to state a CFAA claim.  Although *Citrin* and the decisions following it have considered the accessing party's intent and whether that intent was inconsistent with the scope of access permission, this standard is still confined to the issue of intent at the time of access.  *See, e.g.*, *United States v. Rodriguez*, 628 F.3d 1258, 1263 (11th Cir. 2010) ("Rodriguez exceeded his authorized access and violated the Act *when he*

14

*obtained personal information for a non-business reason*.") (emphasis added); *Artino*, 638 F.

Supp. 2d at 1060 ("the determinative question is whether Artino breached his duty of loyalty to

NCMIC *when Artino obtained information from NCMIC's computers*") (emphasis added).

Here, Plaintiff has not pled that Mr. Ren held an intent inconsistent with her grant of

permission at the time of access under her Section 1030(a)(2) claim, much less the "intent to

defraud" that her Section 1030(a)(4) claim requires.  Plaintiff makes no allegations regarding Mr.

Ren's intent at the time he copied the video file her iPhone, other than to make a copy of the file

– the very purpose for which Ms. Roe granted him access.  Compl. ¶ 36.  Ms. Roe alleges that

Mr. Ren's "unauthorized access furthered his fraud," *id*. ¶ 99, but she has not alleged what

possible intent Mr. Ren would have had to defraud her while she was staying as a guest in his

home and he had "agreed to assist Ms. Roe in her efforts to hold the Supervisor accountable" in

her sexual harassment complaint.  *Id.* ¶ 30.  Moreover, Plaintiff alleged that Mr. Ren did not

retain counsel for potential claims against their employer until October of 2012, and that he did

not file a lawsuit or publicize the video he had copied until July of 2013.  Compl. ¶ 41.  Plaintiff

also alleged that Mr. Ren's bases for suing his and Ms. Roe's employer and publicizing Ms.

Roe's video arose from retaliation against Mr. Ren because he supported Ms. Roe's sexual

harassment case.  *Id.* ¶ 5.

On these factual claims, Plaintiff pleads no allegations or even bases for plausible

inferences as to why Mr. Ren had any intent adverse to her interests or intent to defraud her *at

the time of access*, which is the only intent relevant to this analysis under the *Citrin* standard.

That Mr. Ren subsequently elected to make the video file available to his counsel or to the news

media in the year after he accessed Plaintiff's iPhone is immaterial.  Because Plaintiff has not

alleged that Mr. Ren had adverse intent or an intent to defraud her at the time he accessed her

iPhone, and cannot use events which occurred *after* Mr. Ren's access to her iPhone to claim that

Mr. Ren lacked authorization at the time of access, this Court should find that Plaintiff has failed

to plead a CFAA violation even under the more lenient *Citrin* standard.

### 4.    Plaintiff Has Failed to Plead Allowable Damages or Loss in Excess of $5,000 That Are Recognized under the CFAA, a Prerequisite for Her Claims.

A plaintiff bringing a CFAA civil action must exceed a statutory threshold amount of

"damage" or "loss," $5000, to plead a claim under the statute.  The CFAA defines "loss" to mean

"any reasonable cost to any victim, including [i] the cost of responding to an offense, [ii]

conducting a damage assessment, [iii] restoring the data, program, system, or information to its

condition prior to the offense, and [iv] any revenue lost, cost incurred, or other consequential

damages incurred because of the interruption of service." 18 U.S.C. § 1030(e)(11).  However,

Ms. Roe has not pled any damages that are cognizable under the CFAA.

Not all types of damages count toward this figure; the plaintiff must allege costs incurred

that stem directly and foreseeably from the unauthorized access.  *See, e.g.*, *A.V. ex rel.

Vanderhye v. iParadigms, LLC,* 562 F.3d 630, 646 (4th Cir. 2009); *Instant Tech., LLC v.

DeFazio*, -- F. Supp. 2d --, 2014 WL 1759184, at *21 (N.D. Ill. May 9, 2014); *Global Policy

Partners, LLC v. Yessin*, 686 F. Supp. 2d 642, 647-48 (E.D. Va. 2010).  Attorneys' fees and costs

for bringing the CFAA action are <u>not</u> includable as damages or losses unless they relate to

remedying the harm to the system or identifying the perpetrator of the damage.  *See, e.g.*, *Mintz

v. Mark Bartelstein & Assocs.*, 906 F. Supp. 2d 1017, 1029-31 (C.D. Cal. 2012) (concluding that

litigation costs or attorneys' fees would *only* be covered under the "loss" definition if necessarily

incurred to identify the individual who accessed the computer, as part of remedying damage to

the system); *Artino*, 638 F. Supp. 2d at 1065-66.

Further, the plaintiff cannot include losses that are not direct responses to or the costs of

remedying any alleged unauthorized access.  *See, e.g.*, *DeWitt Ins., Inc. v. Horton*, No. 4:13-cv-2585, 2014 WL 2208073, at *3-4 (E.D. Mo. May 28, 2014) (collecting cases and dismissing CFAA claim because lost profits were too attenuated from defendant's access to system); *Tan v. Doe*, No. 1:14-cv-2663, 2014 WL 1779048, at *2 (S.D.N.Y. May 5, 2014) (dismissing CFAA claim where plaintiff only alleged losing business opportunities and reputational harm, with no connection to any damage to the computer system at issue).  The CFAA does not recognize lost revenue damages as "loss" unless the damages were "incurred because of interruption of service." 18 U.S.C. § 1030(e)(11); *see also Yessin*, 686 F. Supp. 2d at 653 (rejecting claim for lost profits when no harm to plaintiff's computer system was alleged or proven).

Here, Plaintiff makes only conclusory allegations about damages or loss, none of which constitute qualifying injuries for passing the $5,000 threshold.  Plaintiff's assertions on the loss threshold, in total, are as follows:  "Roe has incurred attorney's fees, copyright registration fees, court filing fees and numerous other costs in excess of $5,000 in combating Ren's excessive authorization.  Roe also lost any economic value the video may have had on the marketplace because the video has been published in numerous places on the Internet.  The video's fair market value exceeds $10,000."  Compl. ¶ 101.

Plaintiff's claimed losses under the CFAA – the ones she attempts to plead – are precisely the types of damages that were expressly rejected by the courts in the aforementioned decisions, because they have <u>no</u> relationship to remedying any harm caused by Mr. Ren's access to Plaintiff's iPhone.  Attorneys' fees in filing a lawsuit are not costs recognized under this provision of the CFAA, nor are costs later incurred that have no relationship to the access of the protected computer.  Copyright registration costs, loss of market value in the video file, and fees and costs associated with suing Mr. Ren are all completely outside of the type of damages that

can be applied to the $5,000 threshold to bring a CFAA claim, because they are not remedial actions in response *to the access of the iPhone*.  Ms. Roe has failed to allege any impairment of the iPhone's functions or operation, has failed to plead that she incurred any expenses to investigate Mr. Ren's access to her iPhone (nor could she, as she pled that she authorized and was present for the access), and has failed to allege that she incurred any costs to repair her iPhone as a result of Mr. Ren's access.

Ms. Roe's failure to allege the type of costs that are considered "loss" or "damages" under the CFAA, which is a statutory prerequisite to a CFAA claim, is yet another reason that this Court should dismiss the CFAA claim.

### V.   Conclusion.

This Court should dismiss the Complaint under Rules 12(b)(1) and 12(h)(3), Fed. R. Civ. P., for lack of subject matter jurisdiction, because Plaintiff failed to move for leave to proceed under a pseudonym in this Court, so that there is no known plaintiff over which this Court can exercise jurisdiction.

In the alternative, for the foregoing reasons, this Court should dismiss the entire Complaint under Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim.  The Computer Fraud and Abuse Act claim (Count 4), brought solely against Mr. Ren, fails to state a claim, because Plaintiff expressly authorized Mr. Ren to access her iPhone in order to copy the video, and his access did not cause any damage to her iPhone or any other recognized statutory damages.  The copyright infringement and RICO claims (Counts 1-3) similarly fail to state a claim, for the reasons set forth in the brief of defendants Bernabei & Wachtel, PLLC and Lynne Bernabei.

Respectfully submitted,

*/s/ Alan R. Kabat*

_____

Alan R. Kabat (# 464258)
Bernabei & Wachtel PLLC
1775 T Street NW
Washington, D.C. 20009-7102
Telephone: (202) 745-1942
Facsimile: (202) 745-2627
E-mail: Kabat@bernabeipllc.com
*Counsel for Defendant Meixing Ren*

DATED:  August 27, 2014

19