UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE ROE, | ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )    Civil Action No. 14-cv-01285 (TSC) <br> ) |
| BERNABEI & WACHTEL PLLC, *et al.*, | ) <br> ) |
| Defendants. | ) <br> ) |

**MEMORANDUM OPINION**

      Plaintiff, who is proceeding under a pseudonym without leave of the Court, was the victim of sexual harassment by her supervisor at Phoenix Satellite Television (U.S.) Inc.  She was able to capture one of the instances of harassment on video, a recording which she shared with certain individuals in connection with an EEOC sexual harassment claim.  That video ultimately became public as a result of her coworkers' Title VII claims against Phoenix.  Plaintiff filed this suit against one coworker, Meixing Ren, the lawyer representing her coworkers in their Title VII claims, Lynne Bernabei, and Bernabei's law firm, Bernabei & Wachtel PLLC ("B&W"), for copyright infringement, a RICO violation, and a violation of the Computer Fraud and Abuse Act (the latter against Ren only).  Currently before the Court are Defendants' motions to dismiss the Complaint and Plaintiff's belated motion for leave to proceed under a pseudonym.  For the reasons set forth below, the Court GRANTS in part and DENIES in part the motions to dismiss and DENIES the motion for leave to proceed under a pseudonym.

I.   **BACKGROUND**

Plaintiff is a journalist who began her career with Phoenix in 2011.  (Compl. ¶ 18).  She was sexually harassed by a supervisor on or about September 6, 2012, and managed to record the interaction – in which the supervisor aggressively moved towards her and touched her inappropriately – using her iPhone's video camera, which was hidden in her purse.  (*Id*. ¶¶ 19-20).  The resulting video was one minute and fifty-three seconds long.  (*Id*. ¶ 24).  Plaintiff applied for and received a copyright registration of the video in October 2013.  (*Id*. ¶ 25; Ex. 2).

Following the September 2012 incident, Plaintiff considered bringing a sexual harassment claim, although she had no interest in publicly disclosing the video.  (*Id*. ¶ 27).  Concerned that the video was valuable and not backed up, she attempted to email the video to herself but was unsuccessful.  (*Id*. ¶ 28).  On September 11, 2012 she contacted several coworkers, including Ren, to discuss her options.  (*Id*. ¶ 29).  She showed the video to Ren and then subsequently met with Ren and a third co-worker offsite.  (*Id*. ¶¶ 30-31).  During the meeting Ren suggested Plaintiff email him a copy of the video, expressing concerns about preserving the evidence and stating that the file would be used for backup purposes only.  (*Id*. ¶ 32).  Although Plaintiff agreed, she had trouble transmitting the file both via email and text due to its size.  (*Id*. ¶¶ 33-34).  Plaintiff stayed at Ren's home from September 12, 2012 to September 16, 2012, and before she left she agreed to allow Ren – who again had expressed concerns about preserving the video – to back up the video onto his computer.  (*Id*. ¶¶ 35-36).

Subsequently, Plaintiff retained counsel and filed an EEOC Complaint.  She showed the video to the EEOC but did not provide them with a copy.  (*Id*. at ¶ 38).  She ultimately settled her claims against Phoenix, and did not "use, share, display or publicly release the video for any purpose after her case was settled."  (*Id*. ¶ 38-40).  She never showed it to Phoenix or any family

members, but kept the video as a "means of last resort" should she need to prove the truth of her allegations. (*Id.* ¶ 39). Plaintiff does not allege that she had any intention of marketing the video, but alleges that had she sought to market it, the fair market value would likely have exceeded $10,000. (*Id.* ¶ 40).

Plaintiff's coworkers, including Ren, retained Bernabei and B&W in October 2012 and sued Phoenix in this court in July 2013 (the "Ren Suit"). (Compl. ¶ 41). Plaintiff alleges that in connection with the Ren Suit, Defendants mounted an aggressive out-of-court public relations campaign against Phoenix that included releasing copies of the video to members of the press. This resulted in numerous media stories about the harassment at Phoenix, some of which referenced the video or made the video publicly available in whole or in part. (*Id.* ¶¶ 42-57). Plaintiff alleges on information and belief that Ren provided the video to Bernabei and B&W. (*Id.* ¶ 58). Plaintiff learned the video had been released when she was contacted by friends and family asking about her connection to the video. (*Id.* ¶ 60).

Plaintiff's Complaint alleges four causes of action:  In Count I, she alleges direct copyright infringement under 17 U.S.C. §§ 101 et seq. (the "Copyright Act") against all Defendants and seeks both damages and injunctive relief. (Compl. ¶¶ 70-75). Count II alleges contributory copyright infringement and seeks damages and injunctive relief against all defendants. (*Id.* ¶¶ 76-79). Count III asserts RICO violations against all defendants. (*Id.* ¶¶ 81-94). Finally, Count IV seeks damages and injunctive relief against Ren under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, for his actions in obtaining the video from Plaintiff's iPhone. (*Id.* ¶¶ 95-104).

All Defendants have moved to dismiss the Complaint.  Bernabei and B&W argue that Counts I and II fail as a matter of law because there is no basis for asserting copyright protection

3

over the video and, even if the video was subject to copyright protection, there is no infringement based on the fair use doctrine. (Bernabei Mem. 7).[1] Because the RICO claim is based on the predicate act of criminal copyright infringement, the failure of the copyright claim would necessarily defeat Plaintiff's RICO claim, which Bernabei and B&W argue fails on additional independent grounds. Specifically, Bernabei and B&W argue that Plaintiff lacks standing to assert a RICO violation and has otherwise failed to plead a viable RICO claim.

Ren argues that Plaintiff fails to state a claim on which relief can be granted as to the CFAA claim (Ren Mem. 10-18) and argues that the Court lacks subject matter jurisdiction over the Complaint in light of Plaintiff's failure to obtain permission to proceed under a pseudonym, permission he argues should not be granted under the facts of the case. (*Id.* 4-9). In response to this argument, Plaintiff has belatedly moved for leave to proceed under a pseudonym ("Pl. Mot").

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Although a plaintiff may survive a Rule 12(b)(6) motion even where "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007) (internal quotation marks and citation omitted). The

---

[1] Although Bernabei and B&W and Ren filed separate motions to dismiss, each joins and adopts the other's motion. For ease of reference, the Court will refer to the motions as "Bernabei Mem." and "Ren Mem." but will apply the arguments to all Defendants as necessary. The Court refers to Plaintiff's oppositions to the respective motions as "Pl. Bernabei Opp'n" and "Pl. Ren Opp'n."

4

Court need not accept as true conclusory allegations or those which merely recite the elements of a cause of action. *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555). In resolving a Rule 12(b)(6) motion, the Court may consider "only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).[2]

### III.     ANALYSIS

#### A.  Plaintiff's Motion for Leave to Proceed Under a Pseudonym

Ren argues that the Court must dismiss the action pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction because Plaintiff never obtained (or sought) leave to proceed under a pseudonym. (Ren Mem. 4). Although the District of Columbia Circuit Court has not yet addressed this issue, Ren cites cases from several other circuits in which courts held that "the failure of a plaintiff to seek leave to proceed under a pseudonym at the time the federal complaint is filed precludes the district court from exercising subject matter jurisdiction." (*Id.* 5) (citing *W.N.J. v. Yocom*, 257 F.3d 1171, 172 (10th Cir. 2001) ("When a party wishes to file a case anonymously or under a pseudonym, it must first petition the district court for permission to do so.") and *Citizens for a Strong Ohio v. Marsh*, 123 Fed. Appx. 620, 637 (6th Cir. 2005) ("Failure to seek permission to proceed under a pseudonym is fatal to an anonymous plaintiff's case….")). Ren argues that because Plaintiff did not timely move for leave to proceed under a pseudonym, this Court does not know who the Plaintiff is, and thus this Court cannot exercise subject matter jurisdiction. (Ren Mem. 6).

---

[2] The Court's authority to consider material beyond the pleadings is broader in connection with a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Scolaro v. D.C. Bd. of Elections & Ethics,* 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

5

By her motion, Plaintiff appears to concede that she must obtain leave from the Court to proceed anonymously (Pl. Ren Opp'n 2-3), and argues in her motion to do so that the Court should grant that permission in order to protect against further invasions of her privacy. (Pl. Mot. 2). Plaintiff asserts that anonymity is called for because sexual harassment is a matter of a "sensitive and highly personal nature." (*Id. passim*). Plaintiff does not allege that she will be subjected to retaliation or that publication of her name will harm any third parties, but that she hopes to avoid creating "yet another record of an association of [her] name with the video of her sexual assault." (*Id.* at 2).

"It is within the discretion of the district court to grant the 'rare dispensation' of anonymity." *U.S. v. Microsoft Corp.*, 56 F.3d 1448, 1464 (D.C. Cir. 1995); *see also Qualls v. Rumsfeld*, 228 F.R.D. 8, 10-11 (D.D.C. 2005) (anonymous litigant may proceed when the court determines that "the need for anonymity outweighs the general presumption that parties' identities are public information and the risk of unfairness to the opposing party") (internal quotations omitted) (citation omitted). Compelling circumstances may be present when "identification creates a risk of retaliatory physical or mental harm," "anonymity is necessary to preserve privacy in a matter of a sensitive and highly personal nature," or in circumstances under which the would-be anonymous party would be "compelled to admit criminal behavior." *Qualls*, 228 F.R.D. at 10-11 (collecting cases) (internal citations and alterations omitted). In determining whether to grant leave to proceed anonymously, the Court should consider

> (1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties;[3] (3) the ages of the persons whose privacy interests are sought to be protected; (4) whether the action is against a

---

[3] Plaintiff essentially merges factors one and two by asserting she will be injured only to the extent that attention is called to a matter of a highly sensitive and personal nature.

> governmental or private party; and (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Nat'l Ass'n of Waterfront Employers v. Chao*, 587 F. Supp. 2d 90, 99 (D.D.C. 2008).  The last three factors are relatively straightforward.  Plaintiff was an adult at the time of the events in question and is suing private individuals and entities, factors which weigh against anonymity.  Defendants do not assert that their ability to defend this lawsuit against an anonymous plaintiff will unduly prejudice them, which weighs in favor of anonymity.

Personal embarrassment is normally not a sufficient basis for permitting anonymous litigation.  *Chao*, 587 F. Supp. 2d at 100 (citing *Qualls*); *see also Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) (plaintiff who would have to disclose alcoholism not permitted to proceed anonymously despite social stigma and embarrassment).  Sexual harassment is not typically considered a matter so highly personal as to warrant proceeding by pseudonym.  *See Chao*, 587 F. Supp. 2d at 99 n.8 ("Matters of a sensitive and highly personal nature include those dealing with birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families");[4] *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712-13 (5th Cir. 1979) (law students' allegations of sex discrimination against law firms did not warrant anonymity).  Although some courts have permitted sexual assault victims to proceed via a pseudonym in order to protect their privacy, those cases have emphasized the importance of doing so in order to avoid deterring other victims from "reporting such crimes." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006); *Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa 2001) ("the public has a interest in protecting the identities of sexual assault victims so that other victims will feel more comfortable suing to vindicate their rights, especially where law

---

[4] The Court does not necessarily endorse the notion that any of these matters are so shameful as to warrant anonymity but considers the brevity of the list instructive in identifying the narrow category of cases in which anonymity is deemed proper.

enforcement officers are involved"). Another judge in this District permitted an adult plaintiff to anonymously sue the club at which she was sexually assaulted for serving her alcohol even though she was underage, crediting the plaintiff's concern that "graphic material about the assault will be discussed…including details of the sexual assault, plaintiff's genital anatomy, hospital examinations, testing, and medications for various sexually transmitted diseases, and consequent psychiatric treatment." *Doe v. De Amigos, LLC*, No. 11-1755 (ABJ), slip op. 3 (D.D.C. Apr. 30, 2012).

Those concerns are less applicable here. Plaintiff's Complaint is not against her assailant and will likely not involve the graphic details of her assault, but is instead at least one step removed from the actual events of September 6, 2012. Moreover, Plaintiffs' name is already publicly associated with the video and the underlying incident, through pleadings and motion practice in the Ren Suit, *Ren et al. v. Phoenix Satellite Television (US), Inc.*, No. 13-cv-1110 (TSC). The Complaint in that action identifies Plaintiff by name, *see* Complaint (ECF No. 1), 13-cv-1110 (July 19, 2013), as do briefs related to a subpoena served by the Ren Suit plaintiffs (represented by Bernabei) on Lexero Law, counsel for Plaintiff in this action. *See* Plaintiffs' Motion to Compel (ECF No. 28), 13-cv-1110 (July 11, 2014); Lexero Law's Opposition to Motion to Compel (ECF No. 30), 13-cv-1110 (July 22, 2014) ("…despite Ms. Wang's copyright claims being unusually strong…")). In light of these facts, Plaintiff's motion for leave to proceed via a pseudonym is denied.[5] Plaintiff must proceed in this action under her true name.[6]

---

[5] Because the Court holds that the need for anonymity is outweighed by other factors, the Court similarly declines to order the entire matter sealed.

[6] Although the rule in some circuits is that a failure to obtain leave to proceed anonymously deprives the Court of subject matter jurisdiction to adjudicate the merits of the claim, *W.N.J.*, 257 F.3d at 1172, this Circuit has no such rule, and the Court will resolve all of the pending motions before it. In this case, perhaps unlike others involving pseudonymous parties, Defendants and the Court know who the Plaintiff is and can adequately address the existence of subject matter jurisdiction which, other than the issue of the Plaintiff's name, is not in doubt.

### B. Plaintiff's Copyright Claims

"A plaintiff seeking to establish copyright infringement must prove '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Stenograph LLC v. Bossard Assoc., Inc.*, 144 F.3d 96, 99 (D.C. Cir. 1988) (quoting *Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). To be copyrightable, "a work must be original to the author," meaning that it was independently created and "possesses at least some minimal degree of creativity." *Feist*, 499 U.S. at 345. Because copyright protection extends only to the "means of expressing" facts, the underlying facts themselves are not protected. *Greaver v. Nat'l Ass'n of Corporate Directors*, 1997 WL 34605245, at *4 (D.D.C. Nov. 19, 1997) (citing *Feist*). Although the creative judgments necessary to create copyrightability may be *de minimis*, the presence of *some* creative judgment is still required. *Feist,* 499 U.S. at 345 (holding that a telephone directory which simply provided phone numbers in ordinary alphabetical order was not sufficiently creative to be copyrightable).

So long as it is sufficiently creative, a compilation of non-copyrightable factual matter may itself be copyrightable if it "is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101; *see, e.g.*, *Atari Games Corp. v. Oman*, 979 F.2d 242, 244-45 (D.C. Cir. 1992) (assuming video game consisted of geometric schemes which were *per se* not original, compilation of schemes in particular order satisfied creativity requirement). Depictions of true, factual, scenes in photographs or film may be protected by copyright in light of the "creative decisions involved in producing a photograph" or video. *See e.g., Los Angeles News Serv. v. Tullo*, 973 F.2d 791, 794 (9th Cir. 1992) (raw video footage of the sites of airplane crash and train wreck were sufficiently

9

original to be copyrightable); *Time Inc. v. Bernard Geis Assocs.*, 293 F. Supp. 130, 142-43 (S.D.N.Y. 1968) (Zapruder film of Kennedy assassination reflected creative decisions such that it was copyrightable).  Copyright law similarly protects audio recordings as reflecting creative judgments on processing and compiling sounds.  *Shaab v. Kleindienst*, 345 F. Supp. 589 (D.D.C. 1972).

Defendants argue that "there is no original work and not even a minimal amount of authorship, creativity, or originality in the cell phone video recording." (Bernabei Mem. 9). Plaintiff counters that the video exists by "virtue of quick and creative thinking," (Compl. ¶ 2) and reflects "quick creative judgments as to the sight and sounds the phone would likely record by leaving the phone in her purse." (*Id.* ¶ 21).[7]

To the extent these allegations suffice to nudge the video across the (low) threshold of creativity, they do so just barely.  However, at this stage of the litigation, the Court must accept the allegations of creativity as true.  Due to the "subtle" nature of assessing whether a work is copyrightable, "determination at the pleading stage will often be impossible."  *Mid Am. Title Co. v. Kirk*, 991 F.2d 417, 422 (7th Cir. 1993) (explaining that "[t]hese matters are more properly addressed at the summary judgment stage . . . [where] the full range of information may be evaluated by the court").  At the pleading stage, a party alleging copyright infringement need only claim ownership over the copyrighted work, that the party has registered the work in accordance with statute, and that the defendant infringed.  *See Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 617 (S.D.N.Y. 2013) (citing *Mid Am. Title Co.*, 991 F.2d at 421-22);

---

[7] Plaintiff expands her description of her creative judgments in her opposition to Defendants' motion.  (Pl. Opp'n at 3-4).  It is well-settled that parties may not amend their pleadings through opposition papers, *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003), and the Court accords no weight to these more detailed allegations, which are particularly flimsy because they merely recite aspects of creativity from case law, some of which are inapplicable to the facts of this case.  (Pl. Opp'n at 3).

*Loud Records LLC v. Minervini*, 621 F. Supp. 2d 672, 677 (W.D. Wis. 2009). Plaintiff has adequately alleged ownership of a valid copyright registration (Compl. ¶ 25) and copying of the piece, and has therefore adequately alleged infringement.[8] Accordingly, Defendants' motions to dismiss Counts I and II of the Complaint is denied.

### C. Plaintiff's RICO Claim

To adequately allege a civil RICO claim, Plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."[9] *Pyramid Secs. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1116 (D.C. Cir. 1991). Plaintiff must also establish standing to assert a RICO claim by alleging an injury to her "business or property," of which Defendants' violation of RICO was both the "but for" and proximate cause. *Holmes v. Secs. Investor Protection Corp.*, 503 U.S. 258, 268 (1992). Defendants argue that Plaintiff has failed to allege injury to her business and property because her only injury is "personal displeasure associated with the disclosure of what she considers to be 'private' information in her video (without any economic losses derived therefrom)." (Bernabei Mem. 31). This misstates Plaintiff's claim,

---

[8] Defendants raise a fair use defense to Plaintiff's infringement claims. This defense is premature and the Court will not address it on a Rule 12(b)(6) motion. "Fair use is a mixed question of law and fact," *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985), and adjudicating a fair use defense involves a fact-intensive inquiry. *See Katz v. Chevaldina*, 900 F. Supp. 2d 1314, 1316 (S.D. Fla. 2012) ("[T]he general rule [is] that fair use defenses are not ripe for determination before the summary judgment stage."); *Browne v. McCain*, 612 F. Supp. 2d 1125, 1130 (C.D. Cal. 2009) ("[I]n light of a court's narrow inquiry at [the motion to dismiss] stage and limited access to all potentially relevant and material facts needed to undertake the [fair use] analysis, courts rarely analyze fair use on a 12(b)(6) motion."). Bernabei and B&W point to instances where Courts have granted a Rule 12(b)(6) motion on the basis of a fair use defense (Bernabei Mem. 10 n. 11), but in those cases the pleadings included sufficient facts, which is not the case here. *See, e.g.*, *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012) (treating a motion to dismiss based on fair use granted by the district court as a motion for summary judgment and affirming because all the evidence needed to assess the defense had been provided).

[9] "Racketeering activity" includes criminal infringement of a copyright. 18 U.S.C. 1961(1)(B). Criminal copyright infringement is willful civil infringement with an intent to profit. 17 U.S.C. § 506(a)(1). Defendants vigorously contest the adequacy of the allegations that Plaintiff owns a valid copyright in the video but do not separately argue that the additional elements of a criminal infringement claim have not been adequately asserted. The Court will assume for purposes of this motion that criminal infringement is adequately alleged.

which asserts the loss of the video's "potential economic value," not any emotional distress. (Compl. ¶ 86).

Although the misuse of intellectual property can suffice to confer standing for a RICO claim, *see, e.g.*, *Bryant v. Mattel, Inc.*, No. 04-9049, 2010 WL 3705668, at *11 (C.D. Cal. Aug. 2, 2010) ("Lost profits can be recoverable if they are concrete and deprived by the wrongful conduct, instead of an intervening event or market condition"), deprivation of the exclusive possession of that intellectual property is not enough – to prevail on her claim Plaintiff would ultimately have to show a "concrete example of how [she] would have exploited [her] exclusive possession" of the video. *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 1020-21 (C.D. Cal. 2011) (denying summary judgment on claims deemed sufficient to survive a motion to dismiss in *Bryant*); *see also Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 657 F. Supp. 2d 104, 110 (D.D.C. 2009) ("The harm must be concrete and actual or imminent, not conjectural or hypothetical."). Plaintiff has alleged that she had no intention of ever showing the video to another person (*See* Compl. ¶¶ 39-40), rendering implausible her allegation that she was injured by loss of the video's "potential economic value." (*Id.* ¶ 86).

The Court need not rule on the issue of standing however, because even were the Court to find that Plaintiff has standing to bring her RICO claim, that claim is deficient because it fails to allege a pattern of racketeering activity. A "pattern" of activity includes two elements: "relatedness and continuity." *W. Assocs. LP, ex rel. Ave. Assocs. LP v. Mkt. Square Assocs.*, 235 F.3d 629, 633 (D.C. Cir. 2001). Conduct is related when "it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc. v. NW Bell Tel. Co.*, 492 U.S. 229, 240 (1989) (citation omitted). Continuity may mean either "a closed

period of repeated conduct, or…past conduct that by its nature projects into the future with a threat of repetition." *Id* at 241.  Applying these definitions, the D.C. Circuit has held that where there was an allegation of a "single scheme" entailing "but a single discrete injury" suffered by a small number of victims, it was "virtually impossible" to state a RICO claim. *Edmonson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995).

Plaintiffs in *Edmonson* were property developers whose attempts to purchase a residential building were repeatedly thwarted by the actions of defendants – the tenants of the building and their attorneys.  In evaluating the adequacy of the RICO allegations, the Court adopted the Third Circuit's multi-factor test, which includes consideration of "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity ... as they bear upon the separate questions of continuity and relatedness." *Id.* (citing *Kehr Packages, Inc. v. Fidelicor, Inc.*, 926 F.2d 1406, 1411-13 (3d Cir. 1991). The Court gave great weight to the fact that all of defendants' predicate acts were in furtherance of one goal: preventing the sale of the building. *Id.*[10]

Applying the *Kehr* test as adopted in *Edmonson*, the D.C. Circuit held that a business dispute between two limited partners involving multiple acts of fraud and subsequent attempts to cover it up over an 8-year period did not amount to a pattern of racketeering activity. *See W. Assocs.*, 235 F.3d at 634.  The Court held that the plaintiff could not establish a pattern simply by

---

[10] The Court also distinguished *Beauford v. Helmsley*, 865 F.2d 1386, *vacated for further consideration in light of H.J.*, 492 U.S. 914, *adhered to*, 893 F.2d 1433 (1989).  Plaintiffs in *Beauford* were tenants and apartment owners in a 12,000 unit, 51-building apartment complex in the Bronx that was converted into condominiums.  865 F.2d at 1388.  Plaintiffs alleged that in connection with the conversion, defendants mailed offering circulars containing fraudulent misrepresentations to over 8,000 residents. *See id.*  The Second Circuit viewed the number of potential victims and the potential for repetition (at the time of the court's decision 40% of the units remained unsold, making future mailings likely) as sufficient to adequately allege a pattern. *Id.* at 1392.

subdividing an ongoing dispute into separate "schemes" when the "four schemes [were] so similar in nature and purpose (i.e., they involve contested bookkeeping entries), and they resulted in a single harm rather than separate injuries." *Id* at 635. Similarly, courts in this District have dismissed RICO complaints asserting activity related to the foreclosure of a single plaintiff's property. *See e.g., Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 282 (D.D.C. 2011), *Zernik v. U.S. Dep't of Justice*, 630 F. Supp. 2d 24, 27 (D.D.C. 2009). In contrast, courts have permitted claims to go forward when the plaintiff alleged that defendants engaged in mail and wire fraud "to defraud three separate Plaintiffs on three distinct occasions in three different ways," *Lu v. Lezell*, --- F. Supp. 3d ---, No. 11-1815, 2014 WL 2199314 at *9 (D.D.C. May 27, 2014) (denying defendant's motion for summary judgment as to RICO claims), and where the plaintiff alleged that multiple victims were defrauded by defendant's false fundraising materials. *Feld Entm't, Inc. v. Am. Soc. for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 312-13 (D.D.C. 2012).

As in *Edmonson* and *W. Assocs.*, here there is but a single victim of Defendants' alleged racketeering activity: Plaintiff. There is a single goal to the racketeering activity: an increased likelihood of success in the Phoenix litigation, and a single (albeit repetitive)[11] injury: infringement of Plaintiff's intellectual property rights. While it is possible that Defendants may continue to utilize the video in connection with their advocacy against Phoenix (the Court notes

---

[11] Plaintiff alleges there is an ongoing threat of repetition because "the predicate acts are part of Bernabei and B&W's regular way of doing business" in that Bernabei and B&W "aggressively inject their legal work in the public sphere on many of their cases" and "have made it clear that they do not accept Roe's copyrights in her video file." (Compl. ¶¶ 93). However, Bernabei and B&W's "regular way of doing business" is alleged to be aggressive publicity, not criminal copyright infringement, and there is no evidence that, once informed of Plaintiff's assertion of her property rights, Defendants continued their "regular way of doing business" in a manner that caused any additional infringement. All of the alleged infringement took place prior to Plaintiff retaining counsel in September 2013. (*Id.* ¶ 61). The examples of more recent press coverage do not include the video in whole or in part. (*Id.* ¶ 65). The threat of continuing predicate acts is therefore hypothetical and speculative at best, and insufficient to establish continuity. *See Bridges v. Lezell, PC*, 842 F. Supp. 2d 261, 266 (D.D.C. 2012).

that Plaintiff has not alleged that Bernabei and B&W have made any new use or distribution of the video since September 2013), any repetition will be in furtherance of the same goal against the same victim.  The D.C. Circuit's guidance in *Edmonson* mandates the conclusion that Plaintiff has failed to establish a "pattern" of racketeering activity.

Because Plaintiff does not allege a "pattern" of racketeering activity,[12] Count Three will be dismissed.

### D.  The Computer Fraud and Abuse Act

The Computer Fraud and Abuse Act, 18 U.S.C. § 1030, is intended "primarily to deter computer hacking."  *Lewis-Burke Assocs., LLC v. Widder*, 725 F. Supp. 2d 187, 194 (D.D.C. 2010) (Facciola, M.J.).  The Act provides a private cause of action for any person "suffering damage or loss" from a violation of the act.  18 U.S.C. § 1030(g).  Plaintiff alleges a violation of 18 U.S.C. § 1030(a)(2)(c), which prohibits "intentionally accessing a computer without authorization or exceeding authorized access, and thereby obtaining ... information from any protected computer."  *Widder*, 725 F. Supp. 2d at 191 (citing 18 U.S.C. § 1030(a)(2)(C)) (alterations omitted).  The statute defines "exceeds authorized access" as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter."  18 U.S.C. § 1030(e)(6).  Alternatively, Plaintiff

---

[12] Defendants devoted substantial resources in their brief to argue that Plaintiff did not adequately allege an enterprise. (Bernabei Mem. 36).  Specifically they argue that the allegations are deficient in that Plaintiff did not allege an enterprise distinct from the defendants themselves. (*Id.*).  This argument collapses two distinct, but related, elements of a RICO claim – whether there is an enterprise and whether each defendant is alleged to have "conducted" the affairs of that enterprise.  Defendants' distinction argument applies most directly when a corporate entity, e.g. a law firm (Compl. ¶ 88), is alleged to be an enterprise: it cannot also be liable for conducting its own affairs.  *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639*, 883 F.2d 132, 140 (D.C. Cir. 1989); *Prunte v. Universal Music Grp.*, 484 F. Supp. 2d 32, 42 (D.D.C. 2007); *McMurtry v. Brasfield*, 654 F. Supp. 1222, 1226 (E.D. Va. 1987).  The Court need not address whether Plaintiff adequately alleged an enterprise because Plaintiff has not even attempted to allege that the Defendants "conducted" the affairs of either alleged enterprise. (*See,* Compl. ¶ 83 ("[t]o demonstrate liability under RICO, a plaintiff must prove that there is 'an enterprise,' engaging in 'racketeering activity' that occurs in a 'pattern.'")).  Similarly, because there is no viable RICO claim, the Court will not address Defendants' argument that the *Noerr-Pennington* doctrine supplies an alternative basis for dismissing the RICO claims.

alleges a violation of 18 U.S.C. § 1030(a)(4), which provides for criminal liability for anyone who "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value." Whether Plaintiff has adequately alleged a violation of either section turns on whether Ren exceeded "authorized access."

The Circuits are divided on what it means to exceed authorized access. The Fifth and Seventh Circuits, in cases where employees misused data to which they had access in the course of their employment, have held that accessing a computer while "violating the duty of loyalty or acting with interests adverse to the employer voids the authorization an employee may have to access the computer" and exceeds authorized access. *Widder*, 725 F. Supp. 2d at 192 (citing *Int'l Airport Ctrs., LLC v. Citrin*, 440 F.3d 418, 421 (7th Cir. 2006) (internal citations omitted)); *see also United States v. John*, 597 F.3d 263, 272 (5th Cir. 2010) ("Access to a computer and data that can be obtained from that access may be exceeded if the purposes for which access has been given are exceeded"). Under the narrower view in the Ninth Circuit, which is shared by a number of other Circuits, a person "exceeds authorized access" when he or she "accesses information on the computer that the person is not entitled to access." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009); *see also, WEC Carolina Energy Solutions, LLC v. Miller*, 687 F.3d 189, 204 (4th Cir. 2012) ("Similarly, we conclude that an employee '"exceeds authorized access"' when he has approval to access a computer, but uses his access to obtain or alter information that falls outside the bounds of his approved access….Notably, neither of these definitions extends to the improper *use* of information validly accessed.") (internal citations omitted) (emphasis in original); *Amphenol Corp. v. Paul*, 591 Fed. Appx. 34, 35-36 (2d Cir.

2015) (affirming summary judgment for employee where employer presented no evidence that employee accessed any data outside the scope of his authorization).

The D.C. Circuit has not ruled on the matter, although Magistrate Judge Facciola of this District adopted the narrower *Brekka* interpretation in *Lewis-Burke Associates LLC v. Widder*, 725 F. Supp. 2d 187, 194 (D.D.C. 2010) ("Exceeds authorized access should not be confused with exceeds authorized use") (quoting *Bell Aerospace Servs., Inc. v. U.S. Aero Servs., Inc.*, 690 F. Supp. 2d 1267, 1272 (M.D. Ala. 2010)).

The *Citrin* line of cases involved facts which are not analogous to those at issue here. Those cases address circumstances in which employees knowingly violated internal employer policies related to the use of data, either unlawfully, or in violation of their employment agreement. *See, e.g. Citrin*, 440 F.3d at 420 (employee, "in violation of his employment contract," destroyed "files that incriminated himself and other files that were also the property of his employer, in violation of the duty of loyalty that agency law imposes on an employee"); *United States v. Rodriguez*, 628 F.3d 1258, 1263 (11th Cir. 2010) (distinguishing *Brekka* in noting that Brekka's employer "had no policy prohibiting employees from emailing company documents to personal email accounts, and there was no dispute that Brekka had been authorized to obtain the documents or to send the emails while he was employed").[13] The Court agrees that the *Brekka* line of cases adopts the proper interpretation of the plain meaning of the statute, which speaks only of authorized "access" to data and not of use. *Widder*, 725 F. Supp. 2d at

---

[13] Plaintiff alleges that Ren intended to defraud her when he copied the video (Compl. ¶¶ 98-99) and elaborates upon that allegation in her Opposition. (Pl. Opp'n 6-8). As noted previously, the Court disregards allegations not within the Complaint. *Arbitraje Casa de Cambio, S.A. de C.V.*, 297 F. Supp. 2d at 170. Even if the Court considered these additional allegations, the allegation of fraud is facially implausible, because it would require Ren to have had the intention in September 2012 of making the video public with the help of an attorney he retained in October 2012 in furtherance of litigation he did not commence until July 2013. The conclusory allegation that Ren acted in furtherance of a fraud (Compl. ¶ 99) by "accessing the video file in a media-playable form" (*Id.* ¶ 102) does not plausibly support an inference of adverse intent given that timeline.

194; *Miller*, 687 F.3d at 204; *Pulte Homes, Inc. v. Laborers' Int'l Union of N. Am.*, 648 F.3d 295, 304 (6th Cir. 2011). Moreover, the CFAA is a criminal statute and the Court is therefore bound to construe it in accordance with the rule of lenity, which requires the Court to choose the more lenient of two possible interpretations. *Miller*, 687 F.3d at 205-06 (citing *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221-22 (1952)). Here, Plaintiff alleges that Ren made a backup copy of the video with her assent. It is Ren's use of the video some 10 months later that Plaintiff alleges was unauthorized and which forms the basis of this suit. Because Ren did exactly what Roe permitted him to do at the time he copied the video, Ren did not "exceed authorized access" within the meaning of the CFAA. Plaintiff's claim under the Act is therefore dismissed.[14]

## IV. CONCLUSION

For the foregoing reasons, the Court grants in part Defendants' motions and dismisses without prejudice Counts Three and Four of the Complaint for failure to state a claim. The Court denies Defendants' motions as to Counts One and Two. Plaintiff's motion for leave to proceed under a pseudonym or to seal this matter is denied. Plaintiff shall file a notice by April 2, 2015, confirming whether or not she intends to proceed with this lawsuit utilizing her true name. If her intent is to proceed, the notice shall contain her true name and address. Future filings in this matter will be captioned using her true name instead of "Jane Roe." If Plaintiff gives notice of her intent to proceed with this lawsuit and provides the necessary information, Defendants shall respond to Plaintiff's complaint within 14 days of Plaintiff's filing.

A corresponding Order will issue separately.

Dated: March 26, 2015

---

[14] Because the Court finds that Ren did not exceed authorized access, it does not reach Ren's argument that Plaintiff did not suffer the threshold amount of damage or loss.